BIA<br>
Counihan, IJ<br>
A205 009 115

# United States Court of Appeals
### FOR THE
### SECOND CIRCUIT

    At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 21st day of May, two thousand twenty-five.

Present:
>Richard J. Sullivan,
>Alison J. Nathan,
>Maria Araújo Kahn,
>>*Circuit Judges*.

---

Jordin Alexander Melgar-Salmeron,

>*Petitioner*,

v.                                                                                   23-7792
                                                                                     NAC

Pamela Bondi, United States Attorney General,

>*Respondent*.

---

The Court is in receipt of a letter from the Government, dated May 19, 2025, *see* Doc. No. 34, responding to the Court's May 12, 2025 order, which directed the Government to provide additional information concerning Petitioner's May 7, 2025 removal, *see* Doc. No. 33.

Upon due consideration, and because the Court requires additional information concerning the Government's noncompliance with the Court's May 7, 2025 order staying Petitioner's removal, it is hereby ORDERED that the Government shall file a letter and supporting declarations with the Court by May 28, 2025, responding to the following questions:

1. When, if ever, did counsel for the Government communicate directly with anyone at Enforcement and Removal Operations ("ERO") New Orleans about Petitioner after learning that Petitioner had been transferred to ERO New Orleans? With whom at ERO New Orleans did counsel communicate? What was the nature of these communications? If counsel did not communicate with anyone at ERO New Orleans after learning that Petitioner had been transferred there, why not?

2. Since counsel for the Government knew as of May 1, 2025 that Petitioner would be transferred to ERO New Orleans to effectuate his removal (and he was transferred to ERO New Orleans on May 2, 2025), *see* Doc. No. 34 at 2–3; *see also id.* at Ex. B ¶ 4, why did counsel transmit this Court's May 7, 2025 order staying Petitioner's removal to ERO Buffalo instead of ERO New Orleans?

3. Did anyone at ERO Buffalo communicate to anyone at ERO New Orleans that the Government had made an assurance to this Court that it would forbear from removing Petitioner until May 8, 2025? If so, who made the communication and to whom was it made? Through what means was such communication made? If no communication was made, who made the decision not to communicate that information and why?

4. Was the Government's assurance to the Court that it would forbear from removing Petitioner until May 8, 2025 ever communicated either directly or indirectly to anyone at ERO New Orleans? If so, by whom and to whom was it communicated, and on what date? If it was not communicated to anyone at ERO New Orleans prior to Petitioner's removal, why not?

5. Why was the date of Petitioner's flight changed from May 9, 2025 to May 7, 2025? Who made the decision to make that change, and when was the decision made? Was that person aware of the Government's assurance to this Court that it would forbear from removing Petitioner until May 8, 2025? Who actually effectuated the flight date change? Was that person aware of the Government's assurance to this Court that it would forbear from removing Petitioner until May 8, 2025?

6. On the morning of May 7, 2025, "ERO Buffalo reviewed an electronic ICE removal system and email communication regarding the manifest for the May 7, 2025 flight," which "confirmed" that Petitioner "had been stricken from the manifest for the May 7, 2025 flight." Doc. No. 34 at 2. When and why was Petitioner stricken from the manifest? When did ERO Buffalo receive the email communication about the manifest? Who at ERO Buffalo reviewed the manifest and why? Was the fact that Petitioner had been stricken from the manifest ever conveyed to ERO New Orleans or to removing officials? If not, why not?

7. Does ICE have any system or mechanism in place to inform removing officials of when the Government has made an assurance to a court that it will forbear from removing a particular individual to ensure that premature removal does not occur? What is the system or mechanism for doing so?

8. What is the Government's overall understanding as to why Petitioner was removed on May 7, 2025 despite an express assurance made to this Court that the Government would forbear from removing Petitioner until May 8, 2025?

9. What is the Government's overall understanding as to why Petitioner was removed at 10:20 a.m. EST on May 7, 2025 despite an existing order from this Court staying removal pending consideration of his Petition for Review?

It is additionally ORDERED that Petitioner shall file a letter with the Court no later than five days after receipt of the Government's letter. This letter shall identify any proposed next steps for the Court to take and provide any supportive legal authority for the proposal. Petitioner may also request leave to file under seal any information that counsel deems necessary to redact. Within five days after receipt of Petitioner's letter, the Government shall file a letter responding to Petitioner's proposed next steps. If the Government disagrees with the proposed next steps, the Government shall provide an alternative proposal with any supportive legal authority. Petitioner may file a reply letter within three days after receipt of the Government's letter.

FOR THE COURT:
Catherine O'Hagan Wolfe
Clerk of Court

*Catherine O'Hagan Wolfe* (signature with Second Circuit seal)